# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LILIAN MARTINEZ,<br>4919 Newton Street<br>Bladensburg, MD 20710<br><br>Plaintiff,<br><br>v.<br><br>GALI SERVICE INDUSTRIES, INC.,<br>*and its successors and assigns*<br>12312 Wilkins Avenue<br>Rockville, MD 20852<br><br>THE GSI GROUP,<br>12312 Wilkins Avenue<br>Rockville, MD 20852<br><br>FRANCISCO J. GALI, JR.,<br>10109 Garden Way<br>Potomac, MD 20854-3966<br><br>FRANCISCO GALI, SR.,<br>6504 Smoot Drive<br>McLean, VA 22101-4003<br><br>JOHN DOE CORPORATION,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civ. Action No. |

## COMPLAINT FOR DECLARATORY
## AND MONETARY RELIEF AND JURY DEMAND

Plaintiff Lilian Martinez ("Plaintiff"), by and through her undersigned attorney, files this

Complaint for declaratory and monetary relief against Gali Service Industries, Inc. ("GSI"); the

GSI Group ("GSI Group"); Francisco J. Gali, Jr., the director and CEO of GSI; Francisco Gali,

Sr., president of the GSI Group; and Defendant John Doe Corporation, the corporate entity that

has taken over operations from GSI since approximately September 2018, to seek redress for

1

violations of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII"), the District of Columbia Human Rights Act, D.C. Code §§ 2-1402.01, *et seq*. ("DCHRA"), for the common law tort of negligent supervision, and for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA"), the District of Columbia Minimum Wage Revision Act, D.C. Code §§ 32-1001, *et seq*. ("DCMWRA"), and the District of Columbia Wage Payment and Collection Law, D.C. Code §§ 32-1301, *et seq*. ("DCWPCL").

Defendants subjected Plaintiff to sexual harassment and assault when Plaintiff's supervisor made inappropriate comments to Plaintiff and ultimately sexually assaulted her on two occasions. After Plaintiff reported the harassment and first assault to management, Defendants failed to take any corrective action and allowed Plaintiff's supervisor to continue his egregious harassment and condoned his behavior. As a direct result of Defendants' repeated failures to act, Plaintiff's supervisor violently attacked Plaintiff a second time, leaving her bruised, battered, and requiring medical attention. Following the attack, Plaintiff called the police and, upon information and belief, her supervisor was ultimately charged and convicted. Less than two weeks after she first reported the harassment, and just days after she was sexually assaulted in the workplace for a second time, Defendants terminated Plaintiff's employment, explicitly stating that her complaints of assault and harassment formed the basis of their decision to terminate her. Defendants also retaliated against Plaintiff in violation of Title VII and the DCHRA by attempting to threaten and intimidate the Plaintiff to deter her from reporting the harassment. Thus, Defendants discriminated against Plaintiff based on her sex and retaliated against her in violation of Title VII and the DCHRA.

Defendants also negligently supervised the supervisor who harassed and assaulted Plaintiff. Defendants had knowledge of the supervisor's connection to a gang and of his

2

harassment and assault of Plaintiff and of another employee, but Defendants did nothing to address Plaintiff's complaints, continued to employ the supervisor, and failed to separate him from Plaintiff, thereby creating the conditions that allowed him to attack Plaintiff a second time. Finally, Defendants also violated the FLSA, the DCMWRA, and the DCWPCL when they failed to pay Plaintiff for approximately two weeks (40 hours) of work by refusing to provide her last paycheck.

Plaintiff seeks to recover all wages, employment benefits, and other compensation lost or denied due to Defendants' violations, as well as compensatory damages, punitive damages, attorneys' fees and costs, pre-and post-judgment interest, and any other legal or equitable relief this Court deems just and proper to redress Defendants' unlawful actions.

## JURISDICTION AND VENUE

1.    This Court maintains subject matter jurisdiction over this action pursuant to 42 U.S.C. § 1988(a), 28 U.S.C. § 1343(a), and 28 U.S.C. § 1331 because Plaintiff's action addresses the vindication of her civil rights and contains a federal question, as it arises under the laws of the United States, specifically Title VII and the FLSA.

2.    This Court maintains supplemental jurisdiction over Plaintiff's claims arising under the laws of the District of Columbia, the DCHRA, the  DCMWRA, and the DCWPCL, pursuant to 28 U.S.C. § 1367(a) because the claims are part of the same case or controversy as those arising under Title VII and the FLSA.

3.    This Court maintains personal jurisdiction over Defendant Gali Service Industries ("GSI") because Defendant GSI, at all times relevant to this Complaint, purposely availed itself of the privilege of conducting employment activities within the District of Columbia, is currently

3

registered in the District of Columbia for the purpose of conducting business in this district, and Defendant GSI's acts and omissions alleged herein occurred in the District of Columbia. At all times relevant to this Complaint, Defendant GSI operated in the District of Columbia, including at 316 Pennsylvania Avenue SE, Washington, DC 20003.

4.    This Court maintains personal jurisdiction over Defendant GSI Group because Defendant GSI Group, at times relevant to this Complaint, purposely availed itself of the privilege of conducting employment activities within the District of Columbia, and Defendant GSI Group's acts and omissions alleged herein occurred in the District of Columbia. At the times relevant to this Complaint, Defendant GSI Group operated in the District of Columbia, including at 316 Pennsylvania Avenue SE, Washington, DC 20003.

5.    The Court maintains personal jurisdiction over Defendant John Doe Corporation, which has, upon information and belief, taken over operations from Defendants GSI and the GSI Group in or around September 2018 and operates in the District of Columbia.

6.    The Court maintains personal jurisdiction over Defendant Francisco Gali, Jr., who, at the times relevant to this Complaint, operated Defendants GSI in the District of Columbia, including at 316 Pennsylvania Avenue, SE, Washington, DC 20003, and John Doe Corporation. The acts or omissions of Francisco Gali, Jr. alleged herein occurred in the District of Columbia. Upon information and belief, as director and CEO of Defendant GSI, Defendant Francisco Gali, Jr. caused Defendants GSI and John Doe Corporation to register to do business in the District of Columbia.

7.    The Court maintains personal jurisdiction over Defendant Francisco Gali, Sr., who is president of the GSI Group, which at all times relevant to this Complaint operated in the District of Columbia, including at 316 Pennsylvania Avenue, SE, Washington, DC 20003. Upon

4

information and belief, as President of GSI Group, Defendant Francisco Gali, Sr. also caused Defendant GSI Group to do business in the District of Columbia and his acts or omissions alleged herein occurred in the District of Columbia.

8. At all times relevant to this Complaint, Defendants employed over 500 employees and engaged in an "industry affecting commerce" within the meaning of 42 U.S.C. §§ 2000e(b) and (h).

9. At all times relevant to this Complaint, Defendants engaged in interstate commerce within the meaning of 29 U.S.C. § 203(s)(1)(A)(i).

10. Venue is proper in the United States Court for the District of Columbia, pursuant to 28 U.S.C. § 1391(b)(1) because the entity Defendants are subject to this Court's personal jurisdiction and are residents of the District of Columbia.

11. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Columbia.

**PARTIES**

12. Plaintiff Lilian Martinez worked as a cleaner for Defendants between June 2016 and July 11, 2016 at 316 Pennsylvania Avenue, SE, District of Columbia, 20003 ("316 Pennsylvania"). Previously, Defendants employed Plaintiff for approximately one week in 2015.

13. At all times relevant to this Complaint, Plaintiff was Defendants' employee within the meaning of Title VII, 42 U.S.C. § 2000e(f); the DCHRA, D.C. Code § 2-1402.01; the FLSA, 29 U.S.C. § 203(e); the DCMWRA, D.C. Code § 32-1002(2); and the DCWPCL, D.C. Code § 32-1301(2).

14.    Plaintiff is a female adult resident of Maryland who was subjected to sexual harassment, assault, and retaliation while working for Defendants in the District of Columbia.

15.    Plaintiff was employed in the District of Columbia within the meaning of D.C. Code § 32-1003(b) because Plaintiff regularly spent more than 50 percent of her working time in the District of Columbia during her employment with Defendants.

16.    Defendant Gali Service Industries, Inc. is a Maryland corporation that does business in the District of Columbia by providing janitorial/custodial and building maintenance services. Defendant Gali Service Industries, Inc. is currently registered to do business in the District of Columbia.

17.    Upon information and belief, Gali Service Industries, Inc. is a subsidiary corporation of the GSI Group.

18.    Upon information and belief, Defendant John Doe Corporation has taken over the operations of Defendant Gali Service Industries as of approximately September 2018, including continuing the use of company equipment and employees.

19.    Upon information and belief, Defendant Francisco Gali, Jr. is the director and CEO of GSI.

20.    Upon information and belief, Defendant Francisco Gali, Sr. is the president of GSI Group.

21.    At the times relevant to this Complaint, Defendants had and exercised both actual and apparent authority to hire and fire Plaintiff, direct and supervise Plaintiff's work, and bind and set wage and hour policies applicable to Plaintiff.

22.     At the times relevant to this Complaint, Defendant GSI provided services at multiple worksites located in the District of Columbia, including at 316 Pennsylvania Avenue, SE.

23.     Defendants are employers within the meaning of Title VII, 42 U.S.C. § 2000e(b); the DCHRA, D.C. Code § 2-1402.01; the FLSA 29 U.S.C. § 203(d); the DCMWRA, D.C. Code § 32-1002(3); and the DCWPCL, D.C. Code § 32-1301(1B).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

24.     Plaintiff exhausted administrative remedies as required before filing this action.

25.     At the times relevant to this Complaint, there existed work-sharing agreements between the Equal Employment Opportunity Commission ("EEOC") and the District of Columbia Office of Human Rights ("DCOHR") and state and federal law allows that filing with one administrative Agency constitutes filing with the other for purposes of ultimately filing suit.

26.      On or about April 19, 2017, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the District of Columbia Office of Human Rights ("DCOHR") alleging discrimination and retaliation on the basis of her sex, in violation of Title VII and the DCHRA.

27.     At the request of Plaintiff, the EEOC issued a notice of right to sue without issuing a finding.  More than 180 days had passed since the filing of Plaintiff's charge.

28.     Plaintiff received the notice of right to sue on November 7, 2018.

29.     All conditions precedent to the filing of this lawsuit have been performed or have occurred as required by Title VII, 42 U.S.C. § 2000e-5 and the DCHRA, D.C. Code § 2-1403.

**FACTS**

30.     Defendant Gali Service Industries, Inc. hired Plaintiff as a cleaner in 2015. She worked for Defendants in 2015 for approximately one week.

31.     Defendants rehired Plaintiff in June 2016.  In June 2016, Plaintiff reapplied for an office cleaner position and was hired by Lisette (last name unknown).

32.     Plaintiff worked for Defendants from approximately June 2, 2016 until her termination on approximately July 11, 2016.

33.     Plaintiff typically worked from about 5:00 pm to 9:00 pm, five days per week, from Monday through Friday.

34.     Plaintiff's rate of pay was $10.50 per hour.

35.     Defendants assigned Plaintiff to clean the office building located at 316 Pennsylvania Avenue, SE, Washington, DC 20003.

36.     Plaintiff's duties included sweeping, mopping, dusting, and wiping down surfaces in various offices in the building, including the National Capital Bank, and cleaning the kitchens on various floors in the building.

37.     During the relevant time period, Misael Omar Lainez was Plaintiff's immediate, on-site supervisor.

38.     Plaintiff's second-line supervisor was Lisette, who did not work at the same site. Lisette was Mr. Lainez's direct supervisor.

39.     Mr. Lainez delivered Plaintiff's pay-checks to her at 316 Pennsylvania Avenue, SE on a bi-weekly basis.

40.     During Plaintiff's employment, Defendants did not provide Plaintiff with any type of written or verbal anti-harassment policy.  Lisette told Plaintiff to report any issues at the worksite to her on-site supervisor, or to call her.

41.     Each night during her shift, Plaintiff had to wait for Mr. Lainez, who had the keys to enter certain office spaces, to open the doors so she could begin cleaning offices.

42.     Upon information and belief, in addition to Plaintiff, approximately two other employees worked under Mr. Lainez's supervision at the same location and during the same work shift.

43.     Shortly after she began working for Defendant, Mr. Lainez subjected Plaintiff to several incidents of unwelcome sexual harassment.

44.     For example, Mr. Lainez regularly made sexually suggestive comments about Plaintiff's appearance, including words to the effect that, "You look very good today."

45.     On another occasion shortly after starting to work for Defendants, Mr.  Lainez threatened Plaintiff if she did not perform sexual acts, stating in Spanish words to the effect of, "You need to kiss me; otherwise I will call immigration on you."  These comments made Plaintiff feel vulnerable and scared in the workplace.

46.     On at least one occasion, Mr. Lainez also told Plaintiff that he was going to lock himself in the office with her.  Based on Mr. Lainez's previous comments, Plaintiff feared for her physical safety.

47.     At times, Mr. Lainez would sit and observe Plaintiff clean. This surprised Plaintiff, as she knew Mr. Lainez oversaw other employees.

48.     Mr. Lainez's comments and actions made Plaintiff very uncomfortable. Plaintiff made her discomfort evident to Mr. Lainez through her demeanor and body language.

49.     Plaintiff expressly and repeatedly rejected Mr. Lainez's sexual advances.  For example, Plaintiff reminded Mr. Lainez that there were security cameras in the building, but Mr. Lainez responded that it did not matter to him. This made Plaintiff feel even more unsafe.

50.     Similarly, to try to prevent Mr. Lainez from continuing his ongoing harassment, Plaintiff also repeatedly told Mr. Lainez that she had a husband and a family, but Mr. Lainez persisted in telling her he was interested in her sexually.  In response, Plaintiff told Mr. Lainez that he should find someone his own age, stop harassing her, and respect her, but her rejections of his advances had no effect on his behavior.  Frightened for her safety, Plaintiff attempted to call Lisette several times in mid- to late June 2016 to report the harassment, but was unable to reach her.

51.     On or about June 30, 2016, while Plaintiff was cleaning an office kitchen, Mr. Lainez approached her from behind and suddenly wrapped his arms around her torso and pressed his body to her back.  Plaintiff struggled to escape, but Mr. Lainez pinned Plaintiff's arms to her sides so that she could not fight him off. Mr. Lainez grabbed Plaintiff's vagina and breasts over her clothing.

52.     Plaintiff was finally able to break away from Mr. Lainez, and she hit Mr. Lainez with the towel she had been using to clean.

53.     Mr. Lainez told Plaintiff to remain in the kitchen until he returned, saying words to the effect that, "If you say anything, I'll call immigration."  As he walked away, he threatened to kill Plaintiff if she reported his actions.  Mr. Lainez referenced his connection to "La Mara," a nickname for the gang Mara Salvatrucha 13 (MS-13).

54.     Plaintiff was terrified and shaken, so she followed his command to stay in the kitchen.  Mr. Lainez then returned and told her to close all the doors before leaving for the day,

10

and she complied.  She remained at work for several few minutes following the attack, then promptly left to go home.

55.     Following the sexual assault, on or about July 1, 2016, Plaintiff called Lisette and told her about the attack by Mr. Lainez, stating that she no longer felt safe around him.  Plaintiff also informed Lisette of the explicit comments and harassment by Mr. Lainez.

56.     Lisette told Plaintiff words to the effect of, "that's just how he [Mr. Lainez] is," and instructed Plaintiff that she needed to continue to work with Mr. Lainez.

57.     Between July 1 and July 6, 2016, Plaintiff continued to work under Mr. Lainez's supervision, at Lisette had directed.  Mr. Lainez behaved angrily toward Plaintiff and assigned her additional offices to clean.  Mr. Lainez told Plaintiff that Lisette had shared Plaintiff's complaints with him.  Mr. Lainez told Plaintiff that Lisette would not believe her if she continued to report him.

58.     On or about July 6, 2016, Plaintiff learned Mr. Lainez sexually assaulted another co-worker after Plaintiff had reported her own assault.  Plaintiff decided to again report the sexual harassment to Lisette, even though Lisette had ignored Plaintiff's prior reports.

59.     On or about July 7, 2016, Plaintiff called Lisette again to report Mr. Lainez's June 30, 2016 attack on Plaintiff and the July 6, 2016 attack on her coworker, and to again raise her concerns regarding Mr. Lainez's behavior and ongoing harassment. This time, Lisette stated that she "might" visit the building to speak to Mr. Lainez about the incidents, but reiterated that Plaintiff and her coworker should continue to go to work despite Mr. Lainez's presence there.

60.     After her call with Lisette, Plaintiff went to work that day as instructed. While on her way to work, Plaintiff called Lisette to let her know that she was going to arrive late for her

5:00 pm shift due to problems with public transportation.  Plaintiff arrived at work at approximately 5:05 pm.

61.    Toward the end of her shift, Mr. Lainez told Plaintiff to go downstairs to his office, where Plaintiff typically signed in and out for each shift.  Plaintiff assumed it was work-related and went to Mr. Lainez's office on the basement floor, where there were no windows.

62.    In the office, Mr. Lainez asked Plaintiff if she had any lotion he could use.  As Plaintiff reached into her bag to retrieve the lotion, Mr. Lainez instructed her to sit on his lap. Feeling frightened, Plaintiff refused and began to leave.

63.    Suddenly, Mr. Lainez grabbed Plaintiff and forcefully mashed his lips onto her face and mouth. Plaintiff was able to break free and ran toward the elevator, which was already open, to try to escape.

64.    Plaintiff frantically pushed a button to close the elevator doors, but Mr. Lainez followed her into the elevator before the doors closed.  In the elevator, Mr. Lainez continued to violently attack Plaintiff.  He grabbed her breasts and squeezed her genitals over her clothing, causing her to writhe in pain.  Mr. Lainez wrapped his arms around Plaintiff to prevent her from breaking free and grabbed her breasts very tightly again.  Plaintiff begged Mr. Lainez to stop, but he laughed.  Plaintiff cried out, stating that that she would file a complaint, but Mr. Lainez again laughed and told her that she did not know she was "messing with" and that Lisette would "never believe" her.  While struggling to get away from Mr. Lainez, Plaintiff attempted to use a trashcan that was already in the elevator to try to separate herself from Mr. Lainez.

65.    Following this attack, Plaintiff developed bruises that lasted for several weeks. She experienced significant pain in her breasts and chest associated with the attack.

12

66.     The elevator doors opened on the fourth floor, where Plaintiff's coworker Carmen Recinos was standing in a nearby office retrieving trash.   Plaintiff saw Ms. Recinos when the doors opened, made eye contact with her, and rushed out toward her.  Upon information and belief, Ms. Recinos observed Plaintiff struggling to get away from Mr. Lainez.

67.     Mr. Lainez did not exit the elevator, but yelled at Plaintiff and Ms. Recinos through the open elevator doors, telling them that no one would believe them if they reported him. Mr. Lainez also threatened Plaintiff and Ms. Recinos, stating that if they reported him, he had friends and family in a gang and he would send them to kill Plaintiff and Ms. Martinez. He also threatened that immigration would be notified if Plaintiff and Ms. Recinos called the police.

68.     Plaintiff hid in a nearby empty office with Mr. Recinos and called her husband. She then called the police with Ms. Recinos.

69.     Plaintiff waited until she could see the police pulling up through the windows that overlooked the street, and when the police arrived, went down to meet them.

70.     Shortly after the police arrived, Lisette also arrived at the building, and appeared to be furious that Plaintiff had called the police.

71.     Upon information and belief, the detective at the scene took Plaintiff into a room in the building to speak with her, and told her that Lisette had informed him that she would fire both Plaintiff and her coworker for "causing trouble" by calling the police.

72.     That evening, the police arrested Mr. Lainez. Upon information and belief, Mr. Lainez was ultimately charged and convicted of three counts of misdemeanor sex abuse and one count of simple assault.

73.     The next day, on or about July 8, 2016, Lisette confronted Plaintiff as she arrived to work and informed her that she should leave work that day and not return.

13

74.     That weekend, on or about July 9 or 10, 2016, Lisette texted Plaintiff and requested that she come to the office on Monday July 11, 2016 at her usual work time so she could sign some papers.

75.     That Monday, on or about July 11, 2016, when Plaintiff arrived at the office, Lisette terminated Plaintiff's employment, referencing the incident and Plaintiff's reporting the assault to the police as the basis for termination.

76.     Plaintiff asked Lisette for her last pay check, but Lisette stated that she did not have one for her and that she would send it to Plaintiff.

77.     Upon information and belief, Ms. Martinez never received her last pay check from the company, covering two weeks of work, or 40 hours, for a total of $420.00.

## CAUSES OF ACTION

### Count 1:  Discrimination on the Basis of Sex in Violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*

78.     Plaintiff re-alleges and incorporates the allegations set forth in the preceding paragraphs as though each and every allegation is fully set forth herein.

79.     At all times material to this Complaint, Plaintiff was a member of the class of persons protected by state and federal statutes prohibiting discrimination based on sex.

80.     Defendants, as employers, are subject to the federal statutes prohibiting discrimination, 42 U.S.C. § 2000e-2(a), as amended, and thus, have a legal obligation to provide Plaintiff and all employees a workplace free of unlawful discrimination.

81.     Defendants failed to provide or maintain any anti-harassment policy, in English or Spanish, or make any effort to effectively promulgate a policy, in English or Spanish.

14

82.     At the times relevant to this Complaint, Plaintiff was subjected to unwelcome sexual advances, touching, and groping by her immediate supervisor, Mr. Lainez, while at work.

83.     At the times relevant to this Complaint, Plaintiff attempted to report this unwelcome conduct to her second-line supervisor, Lisette, who failed to take any meaningful action to abate the harassment and assault, and ultimately terminated Plaintiff's employment immediately after she reported the sexual assault.

84.     At the times relevant to this Complaint, the harassment and assault unreasonably interfered with Plaintiff's work performance and created an intimidating, hostile, and offensive working environment, to the extent that Plaintiff was afraid to go to work.

85.     Defendants failed to take reasonably adequate steps to prevent discrimination against Plaintiff in the workplace when they became aware that Plaintiff was sexually harassed and assaulted by her immediate supervisor after Plaintiff reported Mr. Lainez's conduct to her second-line supervisor, Lisette.

86.     Defendants discriminated against Plaintiff through the actions of its supervisors in subjecting her to sexual harassment and assault, and in doing so, have created an illegal and hostile work environment.

87.     Defendants discriminated against Plaintiff because of her sex when it permitted Mr. Lainez to continue to sexually harass and assault her after Plaintiff reported the harassment and first assault and Defendants failed to take any steps to prevent future assaults. Defendants also did not provide Plaintiff with any type of written or verbal anti-harassment policy. These discriminatory actions constitute violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a).

88.     Plaintiff was treated less favorably than other employees who did not report sexual harassment and were not terminated, and less favorably than other male employees.

89.     As a direct result of Defendants' discriminatory actions taken against Plaintiff, Plaintiff has suffered economic harm, emotional distress, anxiety, depression, social isolation, humiliation, pain, suffering, and loss of enjoyment of life.  Plaintiff has suffered significant stress and anxiety because of the assaults and harassment that have had lasting effects on Plaintiff's personal relationships and her mental well-being. Plaintiff was fearful of going to work, humiliated, angered, embarrassed, and discouraged by Defendants' discrimination, and she suffered compensable emotional distress as a result of these actions by her employer.  Thus, Plaintiff seeks full compensation for this emotional damage, as well as for her economic losses, including but not limited to loss of wages.

90.     Pursuant to the 1991 Amendments to Title VII, Plaintiff is also entitled to recover punitive damages for Defendants' malicious, intentional, and repeated violations of federal civil rights law.  Thus, Plaintiff is entitled to recover punitive damages in an amount sufficient to punish Defendants for this illegal conduct and to deter Defendants and other employers from engaging in such conduct, in an amount to be determined by a jury.

91.     Plaintiff also seeks relief, including the implementation of anti-discrimination measures to ensure that Defendants' unlawful employment practices are identified and eliminated, as well as anti-discrimination training for Defendants and all of Defendants' employees and agents, and all other equitable relief to which she is entitled.

92.     Plaintiff is also entitled to recover her attorneys' fees and costs.

**Count 2:  Retaliation in Violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*.**

93.    Plaintiff re-alleges and incorporates the allegations set forth in the preceding paragraphs as though each and every allegation is fully set forth herein.

94.    At all times material to this Complaint, Plaintiff was an employee of Defendants within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(f).

95.    At all times material to this Complaint, Plaintiff was subjected to sexual harassment based on her sex, a group protected by the provisions of Title VII, 42 U.S.C. § 2000e-2(a).

96.    At all times relevant to this Complaint, Plaintiff engaged in protected activity within the meaning of  42 U.S.C. § 2000e-2 and § 2000e-3(a) when she rejected her supervisor's advances, reported the sexual harassment and abuse to Lisette, and when she reported Mr. Lainez's assault of her to the police.

97.    At all times material to this Complaint, Plaintiff suffered an adverse employment action within the meaning of Title VII, 42 U.S.C. § 2000e-3, *et seq*. when Defendants failed to take steps to prevent further harassment and assault by Mr. Lainez and terminated Plaintiff's employment after she reported the sexual assault to her second-line supervisor, Lisette, and to the police.

98.    Defendants subjected Plaintiff to further retaliation when Mr. Lainez assigned Plaintiff additional duties and yelled at her for reporting his harassment and assault to Lisette.

99.    Defendants explicitly and implicitly discouraged Plaintiff from reporting the discrimination using threats and intimidation and then punished Plaintiff when she engaged in protected conduct.

100.    Defendants' stated reason for terminating Plaintiff's employment was because Plaintiff reported the sexual harassment and assault by her supervisor, Mr. Lainez.

101.    Plaintiff was treated less favorably than other employees who did not report sexual harassment and were not terminated, and less favorably than other male employees.

102.    Defendants' conduct, acting through their supervisors, constitutes retaliation and retaliatory harassment, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a).

103.    As a direct result of Defendants' discriminatory actions taken against Plaintiff, Plaintiff has suffered economic harm, emotional distress, anxiety, depression, social isolation, humiliation, pain, suffering, and loss of enjoyment of life.  Plaintiff seeks full compensation for this harm.

104.    Pursuant to the 1991 Amendments to Title VII, Plaintiff is also entitled to recover punitive damages for Defendants' malicious, intentional, and repeated violations of federal civil rights law.  Thus, Plaintiff is entitled to recover punitive damages in an amount sufficient to punish Defendants for this illegal conduct and to deter Defendants and other employers from engaging in such conduct, in an amount to be determined by a jury.

105.    Plaintiff also seeks relief, including the implementation of anti-discrimination measures to ensure that Defendants' unlawful employment practices are identified and eliminated, as well as anti-discrimination training for Defendants and all of Defendants' employees and agents and all other equitable relief, to which she is entitled.

106.    Plaintiff is also entitled to recover her attorneys' fees and costs.

**Count 3: Discrimination on the Basis of Sex in Violation of the District of Columbia Human Rights Act, D.C. Code § 2-1402.01, *et seq.***

107.    Plaintiff re-alleges and incorporates the allegations set forth the preceding paragraphs as though each and every allegation is fully set forth herein.

18

108.    At all times material to this Complaint, Defendants were employers within the meaning of the DCHRA, D.C. Code § 2-1401.02(10).

109.    At all times material to this Complaint, Plaintiff was an employee within the meaning of the DCHRA, D.C. Code § 2-1401.02(9).

110.    At all times material to this Complaint, Plaintiff was a female subjected to sexual harassment based on her sex, a group protected by the provisions of the DCHRA, D.C. Code § 2-1402.11(a).

111.    Defendants failed to provide or maintain any anti-harassment policy, in English or Spanish, or did not effectively promulgate a policy, in English or Spanish.

112.    At all times relevant to this Complaint, Defendants failed to post or provide information regarding the anti-discrimination provisions of the DCHRA, in violation of § 2-1402.51.

113.    Defendant subjected Plaintiff to discrimination on the basis of her sex within the meaning of the DCHRA, D.C. Code § 2-1402.11(a)(1), when Mr. Lainez, Plaintiff's immediate supervisor, subjected Plaintiff to unwelcome sexual advances, touching, and groping while at work.

114.    At the times relevant to this Complaint, Plaintiff attempted to report this unwelcome conduct to her second-line supervisor, Lisette, who failed to take any meaningful action to abate the harassment and assault, and ultimately terminated Plaintiff's employment immediately after she reported the sexual assault.

115.    At all times relevant to this Complaint, the harassment and assault unreasonably interfered with Plaintiff's work performance and created an intimidating, hostile, and offensive working environment, to the extent that Plaintiff was afraid to go to work.  Plaintiff also suffered

significant distress and anxiety because of the assaults and harassment that have had lasting effects on Plaintiff's personal relationships and her mental well-being.

116. Defendants failed to take reasonably adequate steps to prevent discrimination against Plaintiff in the workplace when they became aware that Plaintiff was sexually harassed and assaulted by her supervisor after Plaintiff rejected Mr. Lainez's advances and after she reported Mr. Lainez's conduct to her second-line supervisor, Lisette.

117. Defendants discriminated against Plaintiff through the actions of its supervisors in subjecting her to sexual harassment and assault, and in doing so, have created an illegal and hostile work environment.

118. Defendants discriminated against Plaintiff because of her sex when it permitted Mr. Lainez to continue to sexually harass and assault her after Plaintiff reported the harassment and first assault and Defendants failed to take any steps to prevent future assaults. Defendants also did not provide Plaintiff with any type of written or verbal anti-harassment policy. These discriminatory actions constitute violations of D.C. Code. §§ 2-1402.11, *et seq*.

119. As a direct result of Defendants' discriminatory actions taken against Plaintiff, Plaintiff has suffered economic harm, emotional distress, anxiety, depression, social isolation, humiliation, pain, suffering, and loss of enjoyment of life.  Plaintiff has suffered significant stress and anxiety because of the assaults and harassment that have had lasting effects on Plaintiff's personal relationships and her mental well-being. Plaintiff was fearful of going to work, humiliated, angered, embarrassed, and discouraged by Defendants' discrimination, and she suffered compensable emotional distress as a result of these actions by her employer.  Thus, Plaintiff seeks full compensation for this emotional damage, as well as for her economic losses, including but not limited to loss of wages.

120. Plaintiff is also entitled to recover punitive damages for Defendants' malicious, intentional, and repeated violations of federal civil rights law.  Thus, Plaintiff is entitled to recover punitive damages in an amount sufficient to punish Defendants for this illegal conduct and to deter Defendants and other employers from engaging in such conduct, in an amount to be determined by a jury.

121. Plaintiff also seeks relief, and also the implementation of anti-discrimination measures to ensure that Defendants' unlawful employment practices are identified and eliminated, as well as anti-discrimination training for Defendants and all of Defendants' employees and agents and all other equitable relief to which she is entitled.

122. Plaintiff is also entitled to recover her attorneys' fees and costs.

**Count 4:  Retaliation in Violation of the District of Columbia Human Rights Act, D.C. Code § 2-1402.01, *et seq.***

123. Plaintiff re-alleges and incorporates the allegations set forth in the preceding paragraphs as though each and every allegation is fully set forth.

124. At all times material to this Complaint, Plaintiff was an employee within the meaning of the DCHRA, D.C. Code § 2-1402.02(9).

125. At all times material to this Complaint, Defendants were employers within the meaning of the DCHRA, D.C. Code § 2-1402.02(10).

126. At all times material to this Complaint, Plaintiff was subjected to sexual harassment based on her sex, a group protected by the provisions of the DCHRA, D.C. Code §§ 2-1402.01 and 2-1402.11, *et seq*.

127. At all times relevant to this Complaint, Plaintiff engaged in protected activity within the meaning of the DCHRA, D.C. Code §§ 2-1402.11 and 1402.61 when she rejected her

supervisor's advances, reported the sexual harassment and assault to Lisette, and when she reported Mr. Lainez's assault to Lisette and to the police.

128. At all times material to this Complaint, Plaintiff suffered an adverse employment action within the meaning of the DCHRA, D.C. Code §§ 2-1402, *et seq.*, when Defendants failed to take steps to prevent further harassment and assaults by Mr. Lainez and terminated Plaintiff's employment after she reported the sexual assault to her second-line supervisor Lisette and to the police.

129. Defendants subjected Plaintiff to further retaliation when Mr. Lainez assigned Plaintiff additional duties and yelled at her for reporting his harassment and assault to Lisette.

130. Defendants explicitly and implicitly discouraged Plaintiff from reporting the discrimination using threats and intimidation and then punished Plaintiff when she engaged in protected conduct.

131. Defendants stated reason for terminating Plaintiff's employment was because Plaintiff reported the sexual harassment and assault by her supervisor, Mr. Lainez.

132. Plaintiff was treated less favorably than other employees who did not report sexual harassment and were not terminated, and less favorably than other male employees.

133. Defendants' conduct, acting through their supervisors, constitutes retaliation and retaliatory harassment in violation of the DCHRA, D.C. Code § 2-1402, *et seq.*

134. As a direct result of Defendants' discriminatory and retaliatory actions taken against Plaintiff, Plaintiff has suffered economic harm, emotional distress, anxiety, depression, social isolation, humiliation, pain, suffering, and loss of enjoyment of life. Plaintiff seeks compensation for this harm.

135.    Plaintiff is also entitled to recover punitive damages for Defendants' malicious, intentional, and repeated violations of federal civil rights law.  Thus, Plaintiff is entitled to recover punitive damages in an amount sufficient to punish Defendants for this illegal conduct and to deter Defendants and other employers from engaging in such conduct, in an amount to be determined by a jury.

136.    Plaintiff also seeks relief, including the implementation of anti-discrimination measures to ensure that Defendants' unlawful employment practices are identified and eliminated, as well as anti-discrimination training for Defendants and all of Defendants' employees and agents and all other equitable relief, to which she is entitled.

137.    Plaintiff is also entitled to recover her attorneys' fees and costs.

### Count 5: Violations of the FLSA, 29 U.S.C. §§ 201, *et seq.*

138.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claims under the FLSA.

139.    Plaintiff was employed by Defendants to perform janitorial and cleaning services.

140.    Defendants were Plaintiff's employers within the meaning of 29 U.S.C. § 203(d), and at the times relevant to this Complaint, Defendants exercised the power to hire and fire Plaintiff, direct and supervise Plaintiff's work, and bind and set wage and hour policies applicable to Plaintiff.

141.    Defendants were and are aware that the FLSA, 29 U.S.C § 206, requires employers to pay all employees the statutory minimum wage for all hours worked.

142.    During the applicable statutory period, Defendants failed to pay Plaintiff a minimum wage for all hours worked, in violation of 29 U.S.C. § 206.  Specifically, Defendants

did not compensate Plaintiff for her last two weeks of work, during which she worked approximately 40 (forty) hours total.

143.    Defendants did not post or keep posted a notice explaining the FLSA in a conspicuous place so as to permit Plaintiff to readily observe a copy, as required by 29 C.F.R. § 516.4.

144.    Defendants' failure to pay Plaintiff's wages as required by law was not the result of a bona fide dispute.

145.    Defendants' violations of the FLSA were willful and intentional.  Accordingly, a three-year statute of limitations governs this claim pursuant to 29 U.S.C. § 255(a).

146.    At all times relevant to this Complaint, Plaintiff was a non-exempt employee within the meaning of the FLSA and did not meet the requirements for exemption from the FLSA pursuant to 29 C.F.R. §§ 541, *et seq*.

147.    Defendants have not acted in good faith or with reasonable grounds to believe that their actions and omissions were not in violation of the FLSA.  Plaintiff seeks to recover all unpaid minimum wages and liquidated damages in an amount equal to the unpaid wages described above, plus costs and reasonable attorneys' fees incurred in the filing and prosecution of this action, pursuant to 29 U.S.C. § 216(b).

148.    Alternatively, should the Court find that Defendants have not acted willfully in failing to pay minimum and overtime wages, Plaintiff is entitled to an award of prejudgment interest on all unpaid wages at the applicable legal rate.

**Count 6: Violation of the District of Columbia Minimum Wage Revision Act,
D.C. Code §§ 32-1001, *et seq.***

149.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claims under the DCMWRA.

150.    At the times relevant to this Complaint, Defendants were Plaintiff's employer within the meaning of D.C. Code § 32-1002(3).

151.    Defendants were and are aware that the DCMWRA, D.C. Code § 32-1003(a), requires employers to pay all employees the statutory minimum wage for all hours worked.

152.    At the times relevant to this Complaint, Defendants failed to pay Plaintiff the required statutory minimum wage for all hours worked, in violation of D.C. Code § 32-1003(a). Specifically, Defendants did not compensate Plaintiff for her last two weeks of work, during which she worked approximately 40 (forty) hours.

153.    Defendants have not acted in good faith or with reasonable grounds to believe their actions and omissions were not in violation of the DCMWRA, nor did they promptly pay the full amount of wages that Plaintiff is owed.

154.    Defendants did not post a copy of the relevant wage and hour laws or regulations in a conspicuous and accessible place in the premises at which the Plaintiff was employed, as required by D.C. Code § 32-1009.

155.    Plaintiff is entitled to recover all unpaid wages, statutory penalties, liquidated damages in an amount equal to treble the amount of unpaid wages, and reasonable attorneys' fees and costs  pursuant to D. and D.C. Code § 32-1308.

**Count 7: Violation of the District of Columbia Wage Payment and Collection Law, D.C. Code §§ 32-1301, et seq.**

156.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claims under the DCWPCL.

157.    At the times relevant to this Complaint, Defendants were Plaintiff's employers within the meaning of D.C. Code §§ 32-1301(1B).

158.    Defendants were and are aware that the DCWPCL, D.C. Code § 32-1303, requires employers to pay an employee who it has discharged all wages earned not later than the working day following the discharge and that, if an employee quits or resigns, the employer shall pay the employee's wages due upon the next regular payday or within seven days of the date of quitting or resigning, whichever is earlier.

159.    At the times material to this Complaint, Defendants failed to pay Plaintiff a minimum wage for all hours worked, in violation of D.C. Code § 32-1003(a).

160.    At all times material to this Complaint, Defendants failed to pay Plaintiff, upon the termination of her employment, all required minimum wages earned, in violation of D.C. Code § 32-1303.

161.    Defendants did not post a copy of the relevant wage and hour laws or regulations in a conspicuous and accessible place in the premises at which the Plaintiff was employed, as required by D.C. Code § 32-1009.

162.    Plaintiff is entitled to receive reasonable attorneys' fees and costs, back wages, liquidated damages equal to treble unpaid wages, statutory penalties, and such legal and equitable relief as may be appropriate pursuant to D.C. Code § 32-1308(a)(1)(A).

**Count 8: Negligent Supervision**

163.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claim for negligent supervision.

164.    At all times material to this Complaint, Defendants knew or should have known that Mr. Lainez posed a threat to Plaintiff and other employees because Plaintiff reported his harassing behavior, including the June 30, 2016 sexual assault, to Lisette.  Defendants were also

aware of Mr. Lainez's threatening behavior because Plaintiff's co-worker had also reported to Lisette that she had been assaulted by Mr. Lainez on or about July 6, 2016.

165.    At all times material to this Complaint, Defendants knew or should have known that Mr. Lainez posed a threat to Plaintiff and other employees because, upon information and belief, Lisette knew about Mr. Lainez's connection to a known gang, and threatened Plaintiff with that connection to dissuade her from reporting Mr. Lainez's behavior.

166.    At all times material to this Complaint, Defendants failed to adequately supervise Mr. Lainez because they failed to take any meaningful actions to prevent subsequent sexual assaults by Mr. Lainez on Plaintiff.  Instead of addressing the complaints of Plaintiff and her coworker, Defendants instructed Plaintiff to return to work in the same conditions that led to the repeated harassment and two sexual assaults.

167.    Plaintiff is entitled to receive compensatory and punitive damages for this tort, including any legal and equitable relief as may be appropriate.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court adjudge the following:

A.    That Defendants be found in violation of the Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the District of Columbia Human Rights Act, D.C. Code §§ 2-1402.01, *et seq.* ("DCHRA"); and

B.    That Defendants be found in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"); the District of Columbia Minimum Wage Revision Act, D.C. Code §§ 32-1001, *et seq.* ("DCMWRA"); the District of Columbia Wage Payment and Collection Law, D.C. Code §§ 32-1301, *et seq.* ("DCWPCL"); and

C.     That Defendants be found to have negligently supervised its employee; and

D.     That Defendants be ordered to pay Plaintiff an amount sufficient to fully compensate her (including tax consequences) for her economic losses, including lost wages and benefits, interest on the back pay, and compensation for any special damages sustained as a result of the Defendants' unlawful action; and

E.     That Defendants be ordered to pay compensatory (non-economic) damages, in an amount to be determined at trial;

F.     That Defendants be ordered to pay punitive damages, in an amount to be determined at trial;

G.     Order Defendants to pay Plaintiff the unpaid wages owed to her pursuant to 29 U.S.C. § 206, plus an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b);

H.     Order Defendants to pay Plaintiff all unpaid wages, plus an amount of liquidated damages equal to treble the unpaid wages pursuant to D.C. Code § 32-1012(b) and D.C. Code § 32-1308(a)(1)(A);

I.     That Defendants be ordered to pay reasonable litigation costs, expert fees, and reasonable attorneys' fees; and,

J.     That the Court grant any other such relief that the Court may deem just and equitable, and as the nature of this cause may require.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and pursuant to the local rules of this Court, Plaintiff demands a jury trial as to all issues so triable.

Dated: January 24, 2019                                Respectfully submitted,


__/s/_____
Jillian Moo-Young, Esq. (Bar No. 1045088)
Gary M. Gilbert, Esq. (Bar No. MD15808)
*Attorneys for the Plaintiff*
Gilbert Employment Law, P.C.
1100 Wayne Ave., Ste. 900
Silver Spring, MD 20910
Tel: (301) 608-0880; Fax: (301) 608-0881
jmooyoung-efile@gelawyer.com