**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LILIAN MARTINEZ,

Plaintiff,

v.

GALI SERVICE INDUSTRIES, INC., *et al.*,

Defendants.

Civil Action No. 19-0157 (ABJ)

CARMEN RECINOS

Plaintiff,

v.

GALI SERVICE INDUSTRIES, INC., *et al.*,

Defendants.

Civil Action No. 19-0158 (ABJ)

**MEMORANDUM OPINION**

On October 2, 2020, the Court granted in part the motions for default judgment filed by plaintiffs Lilian Martinez ("Martinez") and Carmen Recinos ("Recinos") in their separate lawsuits. *See* Mem. Op. & Order, Civ. A. No. 19-157 (Martinez) [Dkt. # 24]; Civ. A. No. 19-158 (Recinos) [Dkt. # 25]. Pursuant to Federal Rule of Civil Procedure 55(b), this Court found the four defendants – Gali Service Industries, Inc. ("GSI"), the GSI Group, Francisco J. Gali Jr., and Francisco Gali Sr. – liable under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); the District of Columbia Human Rights Act, D.C. Code §§ 2-1402.01, *et seq.* ("DCHRA"); the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"); the District of

Columbia Minimum Wage Revision Act, D.C. Code §§ 32-1001, *et seq.* ("DCMWRA"); and the District of Columbia Wage Payment and Collection Law, D.C. Code §§ 32-1301, *et seq.* ("DCWPCL"); and for the common law claim of negligent supervision. *Id.* at 1–2. The Court called for additional information in order to determine the amount of damages and attorneys' fees to award, and the plaintiffs have now filed multiple supplemental memoranda.

## BACKGROUND

### I. Factual Background

The facts underlying the determination of liability are set out in detail in the Court's October 2020 Memorandum Opinion, and that account is incorporated here.

In 2016, both plaintiffs were employed by defendants as janitorial staff at an office building located at 316 Pennsylvania Avenue, SE, Washington, D.C. Martinez Complaint, Civ. A. No. 19-157, [Dkt. # 1] ("Martinez Compl.") ¶¶ 12–13; Recinos Complaint, Civ. A. No. 19-158 [Dkt. # 1] ("Recinos Compl.") ¶¶ 12–13. The complaints allege that they were harassed, threatened, and sexually assaulted by their immediate supervisor, and that while plaintiffs reported the illegal conduct to his supervisor, the company took no steps to protect them. Instead, it fired the two women, and withheld some of the wages that were due.

Specifically, the complaints allege that while the plaintiffs were working for defendants, they were subjected to "several incidents of unwelcome harassment" by their onsite supervisor, Maisel Omar Lainez. Martinez Compl. ¶ 43; Recinos Compl. ¶ 42. Lainez made sexually suggestive comments to Martinez about her appearance and threatened to call immigration officials if she refused to perform sexual acts with him. Martinez Compl. ¶¶ 44–45. Lainez also made sexually suggestive comments to Recinos about her body and told her that they "could have a secret relationship." Recinos Compl. ¶ 43. Both plaintiffs repeatedly rejected these advances,

and both attempted to report this behavior to Lainez's supervisor, Lisette, in June of 2016 without success. Martinez Compl. ¶¶ 49–50; Recinos Compl. ¶ 46. Martinez was never able to reach her, and Recinos alleged that Lisette never answered her calls or responded to voice mails or texts. *Id.* When Recinos was finally able to talk with Lisette in late June, Lisette did not take the complaints seriously and did not take any further action. Recinos Compl. ¶ 47.

Both plaintiffs were then attacked by Lainez. Martinez Compl. ¶ 51; Recinos Compl. ¶ 49. On June 30, 2016, Lainez approached Martinez from behind and groped her breasts and groin area. Martinez Compl. ¶ 51. When Martinez called Lisette to report this attack the next day, Lisette responded, "that's just how he is," and instructed Martinez to continue working under his supervision. *Id*. ¶¶ 55–56. On or about July 6, 2016, Lainez approached Recinos from behind and groped her breasts and groin area. Recinos Compl. ¶ 49. He bit her neck and arm, threw her against a wall, pushed her to the ground, and attempted to rip off her clothing. *Id.* When she reported this incident to Lisette the same day, Lisette told her to return to work. *Id.* ¶¶ 54–55.

After both plaintiffs returned to work as instructed, Lainez again assaulted Martinez. Martinez Compl. ¶¶ 60–61; Recinos Compl. ¶ 56. He called her into an office, ordered her to sit on his lap, and then forcefully grabbed and kissed her. Martinez Compl. ¶¶ 61–63. Martinez broke free and escaped to an elevator, but Lainez followed her and continued to grab her breasts and genitals while laughing at her requests that he desist. *Id.* ¶ 64. The elevator opened on a floor where Recinos was cleaning, and she observed Martinez "struggling to get away from [Lainez]." *Id.* ¶ 66; Recinos Compl. ¶ 57. When Martinez broke free, Lainez yelled to both women that no one would believe them if they reported him, and he warned them that immigration would be notified and gang members in his family would harm them if they did. Martinez Compl. ¶ 67.

Both plaintiffs hid in a nearby office and called the police. Martinez Compl. ¶¶ 67–68; Recinos ¶¶ 60–61. The police arrested Lainez, and he was "ultimately charged and convicted of three counts of misdemeanor sex abuse and one count of simple assault." Martinez Compl. ¶ 72; Recinos Compl. ¶ 65.

Within days, Lissette fired both plaintiffs, telling Recinos that she should not have called the police and Martinez that reporting the attack to the police was the "basis for termination." Martinez Compl. ¶¶ 73–75; Recinos Compl. ¶ 67. Martinez requested her last paycheck from defendants, covering 40 hours of work for a total of $420.00, but she never received it. Martinez Compl. ¶¶ 76–77. When Recinos picked up her last paycheck, she found 20 hours' worth of wages missing, and defendants also failed to pay her for 100 hours of work she performed in June 2016. Recinos Compl. ¶¶ 69–72. In total, Recinos was not compensated for 120 hours of work, including 20 hours of overtime. *Id.* ¶ 73.

## II. Procedural Background

On January 24, 2019, plaintiffs filed individual complaints in this Court. *See* Martinez Compl.; Recinos Compl. On July 5, 2019, each plaintiff filed a motion for entry of default against all defendants since none of them had responded. *See* Martinez Mot. for Entry of Default Against Defs., Civ. A. No. 19-157 [Dkt. # 11] at 4; Recinos Mot. for Entry of Default Against Defs., Civ. A. No. 19-158 [Dkt. # 12] at 4. After the appropriate submissions were filed regarding service, defaults were entered against all named defendants. Clerk's Entry of Default, Civ. A. No. 19-157 [Dkts. # 13–15]; Clerk's Entry of Default, Civ. A. No. 19-158 [Dkts. # 14–16]; Min. Order, Civ. A. No. 19-157 (July 12, 2019); Min. Order, Civ. A. No. 19-158 (July 12, 2019); Clerk's Entry of Default, Civ. A. No. 19-157 [Dkt. # 17]; Clerk's Entry of Default, Civ. A. No. 19-158 [Dkt. # 18].

Plaintiffs then moved for default judgment. Martinez Mot. for Default J., Civ. A. No. 19-157 [Dkt. # 22] ("Martinez Mot."); Recinos Mot. for Default J., Civ. A. No. 19-158 [Dkt. # 23] ("Recinos Mot."). On October 2, 2020, the Court granted plaintiffs' motions for default judgment pursuant to Federal Rule of Civil Procedure 55(b) in part, finding defendants liable on all claims, including:

- Count One – Hostile Work Environment in violation of Title VII and the DCHRA.
- Count Two – Retaliation in violation of Title VII and the DCHRA.
- Count Three – Violations of the FLSA, the DCMERA, and the DCWPCL.
- Count Four – Negligent Supervision.

The Court also ordered plaintiffs to supplement the record to enable it to determine the amount of damages to award. *Id.* at 23–24.

Plaintiffs filed memoranda regarding damages and attorneys' fees, as well as additional medical documentation. Pl.'s Submission of Information Requested by Ct. Regarding Damages & Att'ys' Fees, Civ. A. No. 19-157 [Dkt. # 27] ("Martinez Damages Memo"); Ex. Medical Documentation, Civ. A. No. 19-157 (SEALED) [Dkt. # 28] ("Martinez Medical Documentation"); Pl.'s Submission of Information Requested by Court Regarding Damages & Att'ys' Fees, Civ. A. No. 19-158 [Dkt. # 28] ("Recinos Damages Memo"); Ex. Medical Documentation, Civ. A. No. 19-158 (SEALED) [Dkt. # 29] ("Recinos Medical Documentation"). Because the Court still required information regarding emotional harm and economic damages, it again ordered plaintiffs to supplement the record in March of 2021. Min. Order, Civ. A. No. 19-157 (March 25, 2021); Minute Order, Civ. A. No. 19-158 (March 25, 2021). Plaintiffs then filed supplemental memoranda. Pl.'s Suppl. Submission of Information Requested by Court Regarding Damages, Civ. A. No. 19-157 [Dkt. # 29] ("Martinez Suppl. Memo"); Pl.'s Suppl. Submission of Information

Requested by Court Regarding Damages, Civ. A. No. 19-158 [Dkt. # 30] ("Recinos Suppl. Memo").

## STANDARD OF REVIEW

"Although the default establishes a defendant's liability, the court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain." *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002) (internal citation omitted), citing *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001). Therefore, when moving for a default judgment, plaintiffs must prove their entitlement to the amount of monetary damages requested. *Int'l Painters*, 239 F. Supp. 2d at 30, citing *Oberstar v. FDIC*, 987 F.2d 494, 505 n.9 (8th Cir. 1993). "In ruling on such a motion, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Int'l Painters*, 239 F. Supp. 2d at 30, citing *United Artists Corp. v. Freeman,* 605 F.2d 854, 857 (5th Cir. 1979). Finally, the movant is "entitled to all reasonable inferences from the evidence offered." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

## ANALYSIS

### I. Compensatory Damages under Title VII and DCHRA for Hostile Work Environment.

The Court will award plaintiffs compensatory damages for their claims of discrimination, and hostile work environment under Title VII and the DCHRA.

Section 1981a of Title VII sets out the amount of damages that may be awarded under the statute:

> The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other

> nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party–
>
> (A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;
>
> (B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and
>
> (C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000; and
>
> (D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

42 U.S.C. § 1981a(b)(3). *See also Robinson v. Ergo Sols., LLC*, 4 F. Supp. 3d 171, 180 n.8 (D.D.C. 2014) ("[T]he cap applies to the combined total of all damages awarded.").

There is limited evidence in the record establishing the size of the company, but plaintiffs have supplied an article about Francisco Gali that states the GSI Group is a "$30 million business employing over 1,000 staff members." Gordon J. Bernhardt, *The Power of Persistence, Francisco Gali*, Profiles in Success, https://profilesinsuccessbook.com/profile-success/francisco-gali/ (last accessed Sept. 17, 2020). Therefore, under subsection 1981a(3)(D), the Court will apply the statutory cap for compensatory and punitive damages under Title VII of $300,000 in each case.

The DCHRA has no statutory cap on compensatory damages, and courts are not bound by Title VII when calculating damages under the local statute. *See Daka, Inc. v. Breiner*, 711 A.2d 86, 101 (D.C. 1998); *see Jean-Baptiste v. Dist. of Columbia*, 931 F. Supp. 2d 1, 18–19 (D.D.C. 2013). Any amount awarded to plaintiffs that exceeds the Title VII cap would be allocated to the violation of the DCHRA. *See Martini v. Fed. Nat'l Mortg. Ass'n*, 178 F.3d 1336, 1349–50 (D.C. Cir. 1999).

Compensatory damages may be awarded for emotional pain and suffering, inconvenience, mental anguish, embarrassment, humiliation, or loss of enjoyment of life, 42 U.S.C. § 1981a(b)(3), and to recover, plaintiff must prove that she suffered these harms as a result of the unlawful conduct by a reasonable certainty. *See Campbell v. Fort Lincoln New Town Corp., Inc.,* 55 A.3d 379, 387 (D.C. 2012) ("A plaintiff must establish both the fact of damages and the amount of damages with reasonable certainty.") (internal quotations omitted). For less tangible injuries, the amount of damages may not be ascertained with specificity, but this uncertainty will not bar recovery as "the amount of recovery will be fixed in the sound discretion of the trier of fact." *Tatum v. Morton*, 386 F. Supp. 1308, 1313 (D.D.C. 1974), citing *Story Parchment Co. v. Paterson Co.*, 282 U.S. 555, 563 (1930). In calculating this recovery, the Court "may make reasonable inferences from the facts and circumstances in evidence." *Tatum*, 386 F. Supp. at 1313, citing *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1945).

Plaintiffs ask the Court to award them $400,000 each in compensatory damages under Title VII and the DCHRA. Martinez Mot. at 28; Recinos Mot. at 28. Each has described the physical pain and emotional harm she suffered as a result of defendants' actions. *See* Aff. of Lilian Martinez, Civ. A. No. 19-157 [Dkt. # 22-1] ("Martinez Aff."); Aff. of Carmen Recinos, Civ. A. No. 19-158 [Dkt. # 23-1] ("Recinos Aff.").

Martinez's medical documents and affidavits show that after the attack, she experienced symptoms including anxiety, distrust of others, withdrawal, and acute stress that were consistent with post-traumatic stress disorder. *See* Martinez Medical Documentation at 4; Martinez Aff. ¶ 30. She also submitted photographs taken by hospital staff immediately after the assault that depict the bruises she sustained. Ex. 1 to Martinez Mot. (SEALED) [Dkt. # 23]. The effects are ongoing, and they have disrupted her relationships with loved ones; she advised the Court, "I have

flashbacks and feel frightened when I am alone, and I am also afraid of being around other people because I fear they will treat me the way my supervisor did." Martinez Aff. ¶ 30; *see also* Supp. Aff. of Lilian Martinez [Dkt. # 29-1] ("Martinez Supp. Aff.") ("Now, even years later after the discrimination I only want to be locked in my room away from the people and things I used to love.").

Recinos also submitted documents reflecting her increased anxiety, stress, and fear resulting from the assault, and she still suffers from panic attacks and headaches. Recinos Medical Documentation at 3; Supp. Aff. of Carmen Recinos [Dkt. 30-1] ("Recinos Supp. Aff.") ¶ 13. The photographs she submitted show the physical irritation and damage to her arms and chest immediately after the attack. Ex. 1 to Recinos Mot. (SEALED) [Dkt. # 24]. In her affidavit, Recinos recounts the lingering effects of the abuse and the impact on her relationships with her husband and children: "I became very emotionally and physically withdrawn . . . I feel desperate and anguished that I cannot go back to the old relationship with my kids." Recinos Supp. Aff. ¶¶ 14, 15.

In addition, both plaintiffs explain that they have been forced to take extraordinary and distressing steps in order to be able to support their families after their losing their jobs. Recinos sold her car, several sets of jewelry, and her wedding ring due to financial instability, Recinos Supp. Aff. ¶ 16, and Martinez also sold several pieces of jewelry and her wedding ring. Martinez Supp. Aff. ¶ 8.

All of this was entirely preventable and directly attributable to defendants' actions because the attacks occurred after plaintiffs placed their employer on notice of the predator on its payroll. Defendants chose to do nothing, which resulted in considerable harm to the plaintiffs. Although the hostile work environment allegations cover a period that only lasted about five weeks, Lainez

was so emboldened by the company's reaction that Recinos was assaulted once, and Martinez was assaulted twice during that time. Accordingly, the Court awards Recinos $300,000 and Martinez $400,000 in compensatory damages for their unnecessary pain and suffering.

## II. Backpay under Title VII and the DCHRA for Retaliation

Plaintiffs also seek backpay for their retaliation claims under Title VII and the DCHRA. Under 42 U.S.C. § 2000e-5(g)(1), the court may award backpay in its discretion as a form of equitable relief. *See id.*; *Ford Motor Co. v. EEOC*, 458 U.S. 219, 225–26 (1982), quoting *Albemarle Paper Co. v. Moody*, 442 U.S. 405, 415–16 (1975). The DCHRA also provides for equitable relief in the form of backpay. D.C. Code § 2-1403.13(a)(1)(A). And the D.C. Circuit has instructed that "[t]he district court should fashion this relief so as to provide a victim of employment discrimination the most complete make-whole relief possible." *Barbour v. Merrill*, 48 F.3d 1270, 1278 (D.C. Cir. 1995). The district court should also reduce the backpay award by the "[i]nterim earnings or amounts earnable with reasonable diligence by the [plaintiff]." *Ford Motor Co.*, 458 U.S. at 226, citing 42 U.S.C. 2000-e5(g)(1).

In its discretion, the Court finds that both plaintiffs are entitled to backpay as equitable relief.

Martinez worked for defendants in the evening to make ends meet while she also worked for Marriott Corporation during the day. Martinez Supp. Aff. ¶ 6. She continued to work until she fell and sustained a knee injury on the job sometime in May 2018. *Id.* ¶ 10. So she is entitled to recover the income she lost when she was fired from the evening job from the date of her firing until her injury rendered her unable to work at all. But that amount must be reduced by any earning she received for evening work in the interim. Martinez originally worked for Marriot eight hours a day for five days a week, at a rate of $14.50 per hour. *Id.* at ¶ 6. After defendants fired Martinez,

she asked Marriot to increase her hours, and for a period of approximately one month around September 2016, she worked thirteen hours per day. *Id.* at ¶ 9. This five-hour increase, which should have been paid at the time-and-a-half rate of $21.75,[1] for one month amounts to $2,175 in additional earnings.

Martinez will be awarded $210 for every week between the date defendants fired her, July 11, 2016, until the date of the knee injury because her inability to work a second job thereafter was no longer attributable to the defendants. Martinez Supp. Aff. ¶ 10.[2] This amounts to $19,740,[3] which will be reduced by the interim earnings Martinez received from Marriott after defendants fired her, which is $2,175. This brings her total backpay award to $17,565.00.

After her firing, Recinos "applied to numerous jobs . . . at least two jobs per week, if not more," but was unable to find a position until February 2017. Therefore, Recinos will be awarded $230 for every week from the date of her firing, July 8, 2016, until she was able to find work again in February 2017. Recinos Supp. Aff. ¶¶ 4, 10.[4] This amounts to $6,670.[5]

## III. Damages under FLSA, DCMWRA, and DCWPCL

1 In D.C., no employee shall work longer than forty hours a week "unless the employee receives compensation for employment in the excess of 40 hours at a rate not less than 1 1/2 times the regular rate at which the employee is employed." D.C. Code § 32-1003(c) (2018). Similar statutes exist in both Maryland, Md. Code Ann. § 3-420 (2017), and Virginia, Va. Code Ann. § 40.1-29.2(B) (2021).

2 Plaintiff Martinez's wage per week was $210.00 while working at Gali. Ex. 1 to Martinez Damages Memo [Dkt. # 27-1].

3 The Court calculated this amount to May 1, 2018 because an exact date of the knee injury in May of 2018 was injury is unknown. Martinez Supp. Aff. ¶ 10.

4 Plaintiff Recinos' wage per week was $230.00 while working at Gali. Ex. 1 to Recinos Damages Memo [Dkt. # 28-1] ("Recinos Earnings").

5 The Court calculated this amount to February 1, 2017 because the exact date she was able to find work again is unknown. Recinos Supp. Aff. ¶ 10.

A plaintiff who prevails under the FLSA, DCMWRA, and DCWPCL is entitled to recover unpaid wages, liquidated damages, and reasonable attorneys' fees and costs. 29 U.S.C. § 216(b); D.C. Code § 32-1012(a)–(b); D.C. Code § 32-1303(4); *see Pleitez v. Carney*, 594 F. Supp. 2d 47, 50, 53 (D.D.C. 2009). Liquidated damages under the DCMRWA are "treble the amount of unpaid wages," D.C. Code § 32-1012(b)(1); FLSA liquidated damages are equal to the amount of unpaid wages, 29 U.S.C. § 216(b); and DCWPCL liquidated damages amount to "10 per centum of the unpaid wages for each working day during which such failure shall continue after the day upon which payment is hereunder required, or an amount equal to treble the unpaid wages, whichever is smaller." D.C. Code § 32-1303(4). But "[a]n employee may not recover for nonpayment of wages separately under the FLSA, the DCMWRA, and the DCWPC[L] since that would result in a double (or triple) recovery for unpaid wages." *Perez v. C.R. Calderon Constr., Inc.*, 221 F. Supp. 3d 115, 139 (D.D.C. 2016), citing *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 333 (1980). The Court will award liquidated damages calculated as three times the amount of unpaid wages for each plaintiff because that is the highest award to which plaintiffs are entitled.

Plaintiffs have submitted affidavits and pay stubs showing their rates of pay at the time of their termination. Martinez Aff. ¶ 27; Ex. 1 to Martinez Damages Memo; Recinos Aff. ¶ 27; Recinos Earnings. Martinez never received her last paycheck, which would have covered 40 hours of work at $10.50 per hour, totaling in $420.00. Martinez Aff. ¶ 27. Accordingly, the Court awards her $1,680.00 in unpaid wages and liquidated damages.

Recinos never received payment for 20 hours of work at $11.50 per hour, totaling in $230.00. Recinos Aff. ¶ 27. Defendants also failed to pay her for 100 hours of work in June 2016, including 80 hours of regular pay and 20 hours of overtime pay, totaling in $1,265.00. *Id.* Overtime wages are paid at the rate of one-and-a-half times the employee's regular hourly rate.

29 U.S.C. §§ 206–07; D.C. Code § 32-1003(c). Therefore, Recinos is entitled to an additional $920.00 in regular pay and $345.00 in overtime pay. This amounts to $1,495.00 in total for unpaid wages, with liquated damages of $4,485.00. Accordingly, the Court awards Recinos $5,980.00.

**IV. Damages for Negligent Supervision**

The damages for negligent supervision in this case overlap with those awarded for plaintiffs' discrimination and hostile work environment claims, as both are generally calculated based on the same underlying factors. *Compare* 42 U.S.C. § 1981a(b)(3) (authorizing compensatory damages under Title VII for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life") *with* D.C. Std. Civ. Jury Instr. § 13-1 "Personal Injury Damages – Elements" (instructing that the following elements may be considered in awarding damages: overall physical and emotional well-being, any physical pain and emotional distress that plaintiff has suffered or will suffer, any inconvenience plaintiff has experienced or will experience, any medical expenses incurred, and more); *see also Daka, Inc. v. McCrae*, 839 A.2d 682, 686 (D.C. 2003) (affirming a compensatory damages award calculated for both statutory retaliation and negligent supervision together but reversing punitive damages on other, unrelated grounds). Therefore, the Court finds that plaintiffs' damages for negligent supervision merge with the compensatory damages awarded under Title VII and the DCHRA for hostile work environment.

**V. Punitive Damages under Title VII and the DCHRA**

Title VII allows for an award of punitive damages "if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). "The terms of 'malice' or 'reckless indifference' pertain to the employer's

knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstand v. Am. Dental Ass'n.*, 527 U.S. 526, 535 (1999). "In other words, the plaintiff must put forth some evidence regarding the mental state of the employer-defendant to recover punitive damages." *Robinson*, 4 F. Supp. 3d at 180.

Under the DCHRA, an award of punitive damages is determined by three "guideposts": "(1) the reprehensibility of the defendant's conduct, (2) the difference between the actual or potential harm suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages and any potential civil or criminal penalties." *Breiner*, 711 A.2d at 101. The Court should consider what amount would be sufficient "to punish unlawful conduct and to deter its repetition." *Id.* at 98.

While there is "considerable discretion in deducing when punitive damages are warranted, due process prohibits the imposition of grossly excessive or arbitrary punishments." *McCrae*, 839 A.2d at 697, *quoting State Farm Mut. Ins. Co. v. Campbell*, 538 U.S 408, 416 (2003) (internal quotations omitted). In *State Farm*, the Supreme Court recognized that "single-digit multipliers" between punitive and compensatory damages "are more likely to comport with due process." *State Farm*, 538 U.S. at 425.

As stated in this Court's previous memorandum opinion, punitive damages are warranted in this case, especially "in light of supervisor Lisette's callous and intentional enabling of Lainez's unacceptable and tortious behavior." Mem. Op. & Order at 24. Defendants' response of firing plaintiffs after Martinez's assault was inexcusable and at least recklessly indifferent, if not malicious, enough to warrant punishment beyond compensatory damages. *See* Martinez Aff. ¶ 26 ("Lisette fired me, referencing [t]he incident with Omar and my reporting it to the police"); Recinos Aff. ¶ 25 ("She told me the company did not like that we had called the police, called us

'bitches,' and told me there was no more work for me. Then she fired me."). Guided by the framework in *State Farm*, this Court will award plaintiffs Martinez and Recinos each $400,000 in punitive damages, which is equal to the amount of compensatory damages awarded to Martinez.

## VI. Attorneys' Fees

The Court will also award plaintiffs attorneys' fees and costs. As the D.C. Circuit underscored in *Eley v. District of Columbia*, a plaintiff bears the burden of establishing the reasonableness of her attorney's requested hourly rate. 793 F.3d 97, 104 (D.C. Cir. 2015). "Whether an hourly rate is reasonable turns on three sub-elements: (1) 'the attorney['s] billing practices,' (2) 'the attorney['s] skill, experience, and reputation' and (3) 'the prevailing market rates in the relevant community.'" *Id.* at 100, quoting *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). To establish the prevailing market rate, a plaintiff must "'produce satisfactory evidence – *in addition to [her] attorney's own affidavits* – that [her] requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Eley*, 793 F.3d at 100 (alterations and emphasis in original).

The D.C Circuit further stated that "evidence of the prevailing market rate can take many forms," including fee orders in other cases, market surveys, affidavits by members of the relevant legal community, and standardized fee matrices. *Id.* at 105, n.5. Plaintiffs may submit attorneys' fee matrices, most commonly the *Laffey* Matrix, as one type of evidence that "provides[s] a useful starting point" in calculating prevailing market rate. *Id.* at 100, quoting *Covington*, 57 F.3d at 1109.

The hourly rates in plaintiffs' cases range from $333.00 to $532.00 per hour, Ex. 2 to Martinez Damages Memo [Dkt. # 27-2]; Ex. 2 to Recinos Damages Memo [Dkt. # 28-2], and the

attorneys provided information about their backgrounds and experience through individual affidavits to support the reasonableness of these rates. *See generally* Civ. A. No. 19-157, Aff. of Lara D. Varela-Addeo [Dkt. # 27-4]; Aff. of Meghan D. Droste [Dkt. # 27-5]; Aff. of Sandra Braschi [Dkt. # 27-6]; Aff. of Stephanie M. Herrera [Dkt. # 27-7]; Aff. of Jillian Moo-Young [Dkt. # 27-8]; Aff. of Nicole M. Diaz [Dkt. # 27-9]; Decl. of Ari Wilkenfeld [27-10]. Plaintiffs also provided evidence other than these affidavits as required to show that the *Laffey* rates are the prevailing market rates. *See* Aff. of Kristin D. Alden [Dkt. # 27-11] ¶¶ 13–14.

The nature of these cases required plaintiffs' attorneys to file administrative charges of discrimination, arrange mediation and interviews with the D.C. Office of Human Rights, and subsequently file lawsuits with this Court. Martinez Damages Memo at 2; Recinos Damages Memo at 2. Not only were translations required for Spanish-speaking plaintiffs and witnesses, but it was particularly difficult for the attorneys to locate defendants for service after their business appeared to cease operations. *See* Martinez Damages Memo at 2 (explaining that plaintiffs "undertook significant efforts to attempt to serve [d]efendants"); Recinos Damages Memo at 2.

The Court finds that plaintiffs' lawyers have used the appropriate *Laffey* matrix to determine reasonable attorneys' fees and made appropriate efforts to allocate the time spent researching common issues between Martinez's and Recinos' cases. But the Court will not include hours expended to assist plaintiffs with the criminal case against Lainez because that time is not available to recover under Title VII. *See* 42 U.S.C. § 2000e-5(k) ("In any action or proceeding *under this subchapter* the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs.") (emphasis added). The Court finds that the total fee for plaintiff Martinez would be $83,272.88 after the $1,702.80 for billable hours associated with the

criminal case is subtracted from her request.[6] Plaintiff Recinos requested $78,411.54 in attorneys' fees and costs. The Court notes, though, that some unnecessary time was expended in supplementing the record to support the motion for default judgment because the original submissions were deficient. Therefore, it will discount the awards somewhat to account for the inefficiency: counsel will receive $75,000 for the Martinez representation and $70,000 for the work on behalf of Recinos.

**CONCLUSION**

Based on the consideration of the record as a whole, and for the reasons outlined above, plaintiffs are awarded monetary damages in the following amounts:

Plaintiff Martinez:

| | |
|---|---|
| Compensatory Damages: | $400,000.00 |
| Backpay: | $17,565.00 |
| Wage Claims: | $1,680.00 |
| Punitive Damages: | $400,000.00 |
| Attorneys' Fees: | $75,000.00 |
| **Total:** | **$894,245.00** |

Plaintiff Recinos**:**

| | |
|---|---|
| Compensatory Damages: | $300,000.00 |
| Backpay: | $6,670.00 |
| Wage Claims: | $5,980.00 |

6 The billable hours concerning the criminal case were determined by the descriptions the submitted billing history. Ex. 2 to Martinez Damages Memo [Dkt. # 27-2] at 1, 2, 8, 11, and 13.

| | |
|---|---|
| Punitive Damages: | $400,000.00 |
| Attorneys' Fees: | $70,000.00 |
| **Total** | **$782,650.00** |

**SO ORDERED.**

Amy B Jackson

AMY BERMAN JACKSON
United States District Judge

Date: July 30, 2021